Belknap
No. 87-214

THE STATE OF NEW HAMPSHIRE

v.

FRANK J. CANNATA

June 8, 1988

*Stephen E. Merrill*, attorney general (*William H. Lyons*, assistant attorney general, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

## MEMORANDUM OPINION

SOUTER, J. The defendant was convicted on charges of possession and sale of cocaine. RSA 318-B:2. This appeal challenges rulings of the Superior Court (*Murphy*, J.) denying a motion to suppress evidence, and a post-trial defense request either to grant a new trial or to reassemble the jury and reexamine the qualifications of one of its members. We affirm.

In August, 1986, the defendant was arrested and charged after participating with one Carlson in the sale of a pound of cocaine to an undercover police officer. Although Carlson had arranged the sale, the evidence indicated that he took his orders from the defendant, who instructed Carlson in the officer's presence that he need not count the purchase money and corrected Carlson's estimate of the time necessary to obtain another pound of the drug.

Before trial, the defendant moved to suppress evidence consisting of an address book listing Carlson's nickname and two telephone numbers, which was taken from the defendant at the time of his arrest in Florida in May, 1986. The defendant's theory of suppression under the State and National Constitutions was that the seizure of the book was the fruit of an unlawfully pretextual arrest.

It is unnecessary, however, to decide whether the Florida arrest was pretextual in any sense that might have tainted the seizure, because even on the assumptions most favorable to the defendant, it is clear beyond a reasonable doubt that the introduction of the evidence in question could not have been anything worse than harmless error. *See State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). The book entry with name and telephone numbers was simply evidence that the defendant knew Carlson. Since the trial record was replete with evidence that the defendant associated with Carlson and acted as his superior in the course of the drug sale, the effect of introducing the page from the address book must have been too cumulative and trivial to affect the verdict.

Following his conviction, the defendant learned that about a week after his trial one of his jurors had been excused from sitting in a case of driving while under the influence of alcohol. In the later case, the judge asked the venire whether anyone belonged to an organization "whose purpose [was] to prohibit or ban the sale or use of intoxicants," and the juror in question approached the bench when asked if there was any reason why he could not serve. The judge excused the juror after he indicated that he had reservations about sitting, since he was a recovering alcoholic and he and his wife were "involved" in drug and alcohol counselling. Based on these facts, the defendant moved for a new trial or, alternatively, for an opportunity to inquire into the possibility of the juror's disqualifying bias or prejudice, either by interviewing the juror or conducting a post-trial *voir dire* in the presence of the court.

■ There was no error in denying the motion. The juror's statement was, of course, insufficient to entitle the defendant to a new trial, since the juror's own testimony or affidavit would have been inadmissible for that purpose. *See Bunnell v. Lucas*, 126 N.H. 663, 668, 495 A.2d 1282, 1285 (1985); *Leighton v. Sargent*, 31 N.H. 119, 137 (1855).

The only remaining question is whether the trial judge abused his discretion in refusing to sanction further investigation, or to recall the juror or the jury panel for direct inquiry into possible bias. *See Bunnell v. Lucas, supra* at 668–69, 495 A.2d at 1285. We think there was no abuse, because there was no substantial ground to doubt the juror's qualification to sit on the drug case.

Strictly speaking, the juror's disqualification was never established even in the second case, *see State v. Cross*, 128 N.H. 732, 737, 519 A.2d 272, 276 (1986) (qualification turns not on preconceptions, *per se*, but on willingness and ability to follow the law), although the trial judge naturally did the sensible thing in excusing the juror, once his reservation was shown to be grounded in personal experiences with misuse of alcohol. *See id.* at 737–38, 519 A.2d at 276. What is far more significant, however, is that a recovering alcoholic's reservation about sitting on a case involving misuse of alcohol does not necessarily indicate that any like reservation must have arisen in a case involving cocaine. There is no reason to believe that the juror was not just as honest in expressing no qualms about sitting on the drug case as he was when he raised his concern before the DWI trial a week later.

548

 The trial judge exercised reasonable discretion in declining further inquiry, and the defendant was not entitled to relief under either the National or State Constitutions. *See McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *State v. Cross, supra* at 738, 519 A.2d at 276.

*Affirmed.*

All concurred.