Strafford
No. 89-391

BLAINE KALLGREN

v.

KENNETH AND DOROTHY CHADWICK

April 23, 1991

*Burns, Bryant, Hinchey, Cox & Schulte P.A.*, of Dover (*Donald R. Bryant* on the brief and orally), for the plaintiff.

*Ouellette, Hallisey, Dibble & Tanguay P.A.*, of Dover (*Dennis L. Hallisey* and *Karen H. Springer* on the brief, and *Mr. Hallisey* orally), for the defendants.

THAYER, J. The plaintiff appeals a jury verdict in this tort action arising out of a slip and fall that occurred on January 2, 1981, while the plaintiff was delivering mail for the United States Postal Service in Dover. According to the plaintiff, Blaine Kallgren, his fall occurred at an apartment house owned by the defendants. Following a trial in the Superior Court (*Dickson*, J.), the jury returned a verdict for the defendants. The plaintiff now appeals that verdict, alleging the following errors: (1) the trial court erred in allowing the defendants to argue that no accident occurred, despite the fact that the accident was described in the defendants' pretrial statement under the heading of "Uncontested Facts"; (2) the court erroneously excluded, as prejudicial, certain photographs of the scene of the fall and denied the plaintiff's request for a view; and (3) the court permitted the defendant to introduce improper hearsay statements taken from a conversation between the regular mail carrier and the plaintiff, which essentially assert that there was no dangerous condition on the defendants' premises. For the reasons that follow, we reverse and remand for a new trial.

The relevant facts are as follows. The plaintiff worked for the United States Postal Service as a technician, delivering on five different routes in Dover when the regular mail carriers for those routes had the day off. On January 2, 1981, the plaintiff was delivering mail on a route usually serviced by Charles Wilson. The accident was reported to have occurred at the defendants' apartment house at 92 Locust Street. According to the plaintiff's testimony, he slipped on a patch of ice located on a snow-covered walkway leading from the defendants' property. He testified that he fell as he stepped from the porch stairs onto the walkway, landing on his right ankle, and that, in falling, he cleared the snow from the patch of ice at the point of his fall. The plaintiff further testified that he saw that the patch of ice ran to a drain pipe running down the side of the house, and that the ice was about an inch thick and covered an area about three feet in diameter. According to the plaintiff, his physical condition as a result of the fall caused him to retire from his job and left him unable to work because of the permanent injury to his ankle.

Prior to trial, the defendants referred in their pretrial statement to the plaintiff's "alleged injuries" resulting from an "alleged fall." Plaintiff's counsel assumed that this reference under the heading of "Uncontested Facts" meant that the defendants were not disputing the occurrence of the accident. Nevertheless, during his opening statement, the defendants' counsel placed the happening of the accident directly in issue. Throughout the course of the trial, the defense

made several references to Mr. Kallgren's "claimed fall" and what was "alleged to have happened," which could have caused the jury to question whether the plaintiff actually fell on the defendants' property. Consequently, the plaintiff moved that the defendant be precluded from implying during his argument that the accident did not happen. The trial court denied the plaintiff's request, and the defense subsequently made such references to Mr. Kallgren's "claims" during final argument.

During the course of the trial, the plaintiff also offered as exhibits ten photographs of the scene of the alleged accident. Defense counsel objected to the introduction of six of the photographs, identified as exhibits one through six. The photographs in dispute show the scene as it appeared on June 14, 1983, two years after the accident and two months after the defendants sold the property. The court ruled that the prejudicial effect of the photographs "far outweighs their probative value," and would not allow plaintiff's counsel to examine the defendant, Mr. Chadwick, as to whether the photographs were a fair representation of the scene. The trial court also denied the plaintiff's request for a view of the scene of the accident.

Prior to trial, the court denied the plaintiff's motion *in limine* precluding the defense from examining him on what Charles Wilson, the regular mail carrier, had said regarding the condition of 92 Locust Street. During the trial, the defense asked the plaintiff about the conversation between the plaintiff and Mr. Wilson during which Mr. Wilson said that he "didn't recollect any problem" with the premises in the past. Plaintiff's counsel requested a bench conference, during which he objected to the question on the basis of hearsay. The court overruled the objection, and Mr. Kallgren's answer related the contents of the conversation. The defendants' counsel then used this evidence to support his contention that no unsafe condition existed on the premises. At the conclusion of the trial, the jury returned a verdict for the defendants. The plaintiff then brought this appeal.

We first address the plaintiff's claim that the trial court erred in permitting the defense to argue that no accident occurred. The plaintiff contends that defense counsel violated paragraph B of Superior Court Rule 62 by listing facts which he intended to dispute in the "Uncontested Facts" section of his pretrial statement. According to the plaintiff, the defense's conduct frustrated the purpose of the pretrial statement. As a result, the plaintiff claims to have been "surprised" to find that the fall itself was in contention. The plaintiff further claims to have been prejudiced by the court's ruling that the

existence of the fall was subject to argument, because it deprived the plaintiff of the opportunity to gather evidence establishing the happening of the accident. In making this argument, the plaintiff relies upon our decision in *Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 517 A.2d 808 (1986), where we held that the defendant violated Superior Court Rule 62 by not listing a specific defense in the pretrial statement.

In *Welch*, the plaintiff, a night watchman, was injured when he fell on the defendant's property while conducting his early morning security rounds. *Id.* at 534, 517 A.2d at 808–09. In the pretrial statement under the heading of "specific defenses," the defendant generally denied all claims of liability and argued that the accident was caused by the plaintiff. At trial, however, the defense argued that the plaintiff was not authorized to be in the part of the building where he was injured. *Id.* at 534, 517 A.2d at 809. This court held that the defendant violated Superior Court Rule 62, because "it [was] inconceivable that the plaintiff [] could have foreseen that the defendant was going to raise a defense based upon the plaintiff's lack of authorization." *Id.* at 535, 517 A.2d at 810.

■■ In the instant case, however, there was no surprise which left the plaintiff unable to establish the underlying facts of his case. The record clearly shows that the plaintiff did not rely on the stipulated facts, but entered his case in chief with all the relevant facts regarding the fall. We note in passing, however, that the purpose of the pretrial statement is to apprise the parties and the court, unambiguously and accurately, of all uncontested and contested facts. The defendants' reference to "alleged" facts in the uncontested facts section of the pretrial statement could potentially be misunderstood. Although we find no prejudice to the plaintiff in this particular instance, we take this opportunity to note an attorney's duty to submit properly completed pretrial statements.

We next address the plaintiff's assertions that the trial court erred in excluding certain photographs from evidence, and that the plaintiff should have been granted his request for a view. Throughout the trial the plaintiff argued that the accumulation of ice on the walkway was due, in part, to the placement of a drainpipe close to the walkway on which he fell. The excluded photographs, exhibits one through six, show close-ups of the bottom of the drainpipe and, according to the plaintiff, were an integral part of his proof of the dangerous condition that existed at the time of the accident. Exhibits seven through ten also show the scene of the accident, but from a greater distance

than the excluded photographs. The plaintiff contends that exhibits one through six are relevant and probative, because the photographs were identified by the plaintiff as fair representations of the scene of the accident. According to the plaintiff, the fact that the photographs were taken at a different time of year than when the accident allegedly occurred, and shortly after the defendants sold the property, does not make the exhibits prejudicial or irrelevant.

 Regardless of the strength of the plaintiff's arguments, a trial judge is granted broad discretion when balancing the probative value of evidence against the possible prejudice resulting from its admission. *State v. Stearns*, 130 N.H. 475, 486, 547 A.2d 672, 678 (1988). Moreover, the trial court has the discretion to exclude photographs as being prejudicial or as being merely cumulative evidence of an issue already established. *See Marchand v. Public Service Co.*, 95 N.H. 422, 424–25, 65 A.2d 468, 470 (1949). In the instant case, exhibits seven through ten show the scene of the alleged accident with the drain pipe's position next to the walkway. Exhibits one through six are enlarged photographs which show the same scene from a closer vantage, but with paint chips and other signs of disrepair. The condition of the premises, as depicted in exhibits one through six, is not at issue in this case, because the photographs were taken nearly two-and-one-half years after the accident occurred, and at least two months after the defendants sold the property. Therefore, the probative value of these exhibits is slight. Weighed against the danger that these pictures indicate that subsequent repairs were apparently underway, the trial court could properly exclude the photographs. *See* N.H. R. Ev. 407 (evidence of subsequent remedial measures is inadmissible). Moreover, because exhibits seven through ten were admitted into evidence, the excluded evidence was cumulative and not critical to the plaintiff's case. Under these circumstances, we find no error in the trial court's decision to exclude exhibits one through six.

██ ██ For similar reasons, we hold that the trial court's refusal to permit a view of the scene was not in error. The decision whether to allow a view is, by statute, within the discretion of the trial court. *See* RSA 519:21. We will not, therefore, disturb the court's decision unless it is plainly wrong. *State v. Osborne*, 119 N.H. 427, 435, 402 A.2d 493, 499 (1979). As discussed above, the jury had access to a number of photographs of the scene. It seems reasonable to conclude that a view, taken more than eight years after the alleged accident and during the summer, would not provide the jury with a more accurate

evaluation of the condition of the area as it appeared when the relevant events occurred. Moreover, a view would have been cumulative, given the fact that exhibits seven through ten were admitted into evidence. Therefore, we hold that the trial court's decision to deny a view was not in error.

We now address the plaintiff's final argument, that the trial court erred in admitting certain hearsay evidence. At trial, defense counsel examined the plaintiff about a conversation with Charles Wilson, the regular mail carrier to 92 Locust Street. Specifically, the plaintiff testified that he asked Mr. Wilson about the condition of the property in general, and Mr. Wilson responded that he did not recollect any problem on the premises. Prior to this cross-examination, plaintiff's counsel filed a motion in limine requesting that the defense be precluded from engaging in this line of inquiry. The trial court denied the motion and, when the defense asked Mr. Kallgren about the conversation with Mr. Wilson, plaintiff's counsel renewed his objection. Again, the court overruled the objection and allowed the question and answer. The issues surrounding the contents of this conversation and their introduction into evidence are, therefore, properly preserved for review by this court. See In re Matthew G., 124 N.H. 414, 415, 469 A.2d 1365, 1366 (1983).

New Hampshire Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial, or hearing, offered in evidence to prove the truth of the matter asserted." The plaintiff objected to the following exchange between defense counsel and Mr. Kallgren on the basis that it violated the hearsay rule:

Q. "Now, that regular route carrier is Charles Wilson, right?

A. I believe so, yes, sir.

Q. And Mr. Wilson delivered to this premises five out of six days during a routine week, correct?

A. Yes, sir, normally.

Q. And you did make inquiry of Mr. Wilson, did you not?

A. I did the next time I saw him, which was approximately five days after the incident . . . .

Q. Okay, and in response to your inquiry he told you that he had not noticed any problem with the premises in the times that he's used it, is that correct?

A. He said he didn't recollect any problem."

■ Clearly, Mr. Kallgren testified about an assertion made by an out-of-court declarant, Mr. Wilson. Additionally, this line of inquiry is obviously being used by the defendants in an attempt to prove the truth of the matter asserted; *i.e.*, that there was no "problem" or dangerous condition on the defendants' property. The defendants assert, however, that Mr. Wilson's statement is admissible to show that they were never notified of a dangerous condition on their premises. The defendants' argument is premised upon the assumption that any dangerous condition discovered by Mr. Wilson would be reported to the Dover Post Office and followed by a telephone call and letter to the defendants. Nevertheless, the record does not reveal an adequate basis on which it can be assumed that Mr. Wilson never filed any such report. Moreover, in order to address properly the issue of notice, this line of inquiry should be directed to the owners of the property or their agents. *See Hoebee v. Howe*, 98 N.H. 168, 174, 97 A.2d 223, 227 (1953). In essence, the evidence was utilized by the defendants for the purpose of showing that no unsafe condition existed when defense counsel argued the truth of the matter asserted. Under these circumstances, the evidence falls squarely within the definition of hearsay and does not fall within any of the recognized exceptions to the hearsay rule. We hold, therefore, that the trial court erred in allowing this evidence to be introduced.

■■ In civil cases, where an error appears to have affected the outcome below, or where a case "is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal." *Welch v. Gonic Realty Trust Co.*, 128 N.H. at 538, 517 A.2d at 811 (quoting *Both v. Nelson*, 31 Ill. 2d 511, 514, 202 N.E.2d 494, 496 (1964)). Upon reviewing the evidence presented to the jury below, we cannot say that this error was harmless. Mr. Wilson's statement goes directly to the issue of the defendants' liability. The record indicates that defense counsel relied heavily on this evidence in making his argument that no dangerous condition existed on the premises. What other evidence existed on this issue was not as compelling as Mr. Wilson's statement to the plaintiff. Under these circumstances, the jury might have drawn entirely different inferences from all the evidence if the hearsay evidence had not been admitted. *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976).

Our holdings above remove the need for us to address the other hearsay arguments raised by the defendants on appeal.

*Reversed and remanded for a new trial.*

All concurred.